(No. 80-CC-1432–)

EDWARD M. KAFKA, Claimant, *v*. THE STATE OF ILLINOIS, and THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, and THE UNIVERSITY OF ILLINOIS, Respondents.

*Opinion filed July 1, 1982.*

MOHAN, ALEWELT & PRILLAMAN, for Claimant.

CHARLES L. PALMER, for Respondents.

HOLDERMAN, J.

Claimant alleges a breach of employment contract between himself and the State of Illinois, acting through the University of Illinois, and one of its professors, Rudolph G. Mortimer. Claimant seeks to recover for the full contract amount, less the monies actually received by him, and, in addition, pay for unused vacation and statutory interest.

Claimant, in response to a newspaper advertisement, applied to professor Mortimer for the position of research associate under the supervision of professor Mortimer. Following his application and an interview with the professor, Claimant was appointed to the position by the University of Illinois Board of Trustees for the period of March 26, 1979, to March 25, 1980, at a salary of $14,700.00 *per annum*. Professor Mortimer testified that Claimant's duties contemplated at that time were to coordinate activity in five midwestern States regarding a study and experiment on taxicab fleets concerning decelerating lamps on the rear of said taxis.

It developed in 1979 that several of the States selected to participate in this program were not interested and as a result, the program had to be abandoned. Discussions were then held regarding the possibility of the study being conducted in California. Negotiations concerning the possible move centered around cost of living adjustments in Claimant's salary and travel expenses. The parties could not reach an agreement on these issues so the Claimant did not go to California.

It appears from the record that the personal relationship between Claimant and professor Mortimer began to rapidly deteriorate.

During the pay period from September 27, 1979, through October 20, 1979, a total of $415.89 was deducted from Claimant's paycheck. Deductions were also made for the pay periods of November 30, 1979, through December 5, 1979, and December 10, 1979, through December 20, 1979, in the total amount of $572.48.

Professor Mortimer authorized and directed the deductions made through December 5, 1979, when he concluded that Claimant was not performing his duties during the hours for which the deductions were made. This conclusion was based primarily upon the fact that Claimant was not at his desk during the hours in question. Professor Mortimer, however, testified that he did not know whether Claimant was working on his project in other places during these hours. The testimony indicated that some of Claimant's duties did require him to work in places other than his office. Claimant testified that at all times in question he was performing his assigned duties. It therefore appears the deductions made were improper.

The deductions from December 10, 1979, through December 20, 1979, were made because professor Mortimer discharged Claimant in early December. Professor Mortimer testified that the reason for the termination of employment was because Claimant would not move to California under the terms set out by the professor, and that he considered Claimant to be incompetent, arrogant, and did not perform his assigned duties.

It appears from the record that the professor did not have the authority to discharge Claimant and the Respondent has admitted the ineffectiveness of the discharge.

After it was discovered that professor Mortimer did not have the legal authority to terminate Claimant's em-

ployment, Claimant was asked to return to work. He was told that he would have to relinquish any claim for the monies that had been deducted from his salary during the period of his absence from December 7, 1979, until he was asked to return and that the surrender was necessary before he could be placed back on the payroll. The Claimant takes the position that he was wrongfully discharged and that the condition for his resuming his employment was the surrender of certain rights. (15 *Illinois Law & Practice*, Damages.) If the new offer amounts to an offer to modify or waive the rights the employee has under the terms of the original contract, the employee may refuse to accept the offer without diminishing his damages. See 44 A.L.R.3d, *Employment*, p. 640.

The record is clear that Claimant could only return to work by giving up his claim for those monies withheld from him prior to January 4, 1980. It is the Court's opinion that he was under no duty to accept the offer to return to work and surrender certain rights.

It is the opinion of this Court that Claimant has proven he is entitled to damages in the amount of $4,867.54, which amount is the difference between the full contractual salary, $14,700.00, less the monies actually received by Claimant of $9,832.46, which figures were stipulated to by the parties of this suit.

The evidence of an attempt to mitigate his damages by additional work is meager but uncontradicted. Claimant testified that he did seek to find additional employment but he did not elaborate on what he actually did. He stated that a considerable portion of his time was spent in preparation of this law suit.

Claimant also contends he is entitled to additional pay for unused vacation. Under his contract of employment and university policy, Claimant was entitled to paid

vacation during the employment period. He was not entitled to accrue vacation time and collect money in lieu of vacation. Therefore, his claim for vacation pay is denied.

Claimant's claim for interest on past due salary is disallowed. In *Toombs v. State* (1977), 32 Ill. Ct. Cl. 205, this Court stated that interest on awards is not allowable unless specifically provided for by statute. There is not any statute that would apply in the present case.

Award is hereby granted in favor of claimant in the amount of $4,867.54.